**Entered on Docket
October 23, 2012
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA**

The following constitutes
the order of the court. Signed October 23, 2012

_____
**William J. Lafferty, III
U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| In re Slimane Djili, | Case No. 09-47844 |
| Debtor. | Chapter 7 |

## MEMORANDUM DECISION ON ORDER DENYING MOTION TO APPROVE REAFFIRMATION AGREEMENT

This matter came for hearing on August 1, 2012 on the Motion of creditor Nourredine Chakroun ("Chakroun") to Approve a Reaffirmation Agreement (the "Motion") between Chakroun and Slimane Djili ("Djili"), the debtor in this case. The Motion freely concedes that the purpose of the Reaffirmation Agreement, whereby Djili agrees to pay the total sum of Thirty Thousand Dollars ($30,000) to Chakroun, is to settle disputes between the parties set forth in that certain adversary proceeding styled *Chakroun v. Djili*, Adv. Pro. No. 09-04551 (the "Adversary Proceeding"). Motion at 1 [Docket #47]. The Adversary Proceeding seeks a determination that Djili should be denied a discharge under various sections of 11 USC Section 727.

At the August 1 hearing on the Motion, the Court stated that it had reservations to approving the Reaffirmation Agreement as an inducement to settlement of the Adversary Proceeding. The Court believed that serious public policy issues would arise when a creditor sought to settle an action under Section 727 of the Bankruptcy Code, which would deny a debtor a discharge for certain misdeeds that implicate the integrity of the bankruptcy system (and which, if successful, would inure to the benefit of all creditors of the estate), in exchange for the payment of money to one creditor.

At the August 1 hearing, Barbara Matthews, the Assistant United States Trustee, apprised the Court that the Office of the United States Trustee ("UST") had not been given notice of the Motion, or of the parties' intent to settle the Adversary Proceeding, and stated that in such circumstances the UST would wish to review the settlement and the Adversary Proceeding to determine whether the UST would seek to substitute in as a party to prosecute the Adversary Proceeding to conclusion. In the interest of giving the UST time to review the matter, the Court continued the hearing until August 22, 2012, and directed the UST to file a pleading no later than August 17, apprising the Court and the parties of its intentions with respect to the Adversary Proceeding. The Court also told Chakroun and Djili that they could file briefs responsive to the UST's position, if the UST were asking for leave to intervene or substitute into the Adversary Proceeding.

No party filed any briefs prior to the August 22 continued hearing, and the UST neither apprised the Court nor the parties of its intentions concerning the Adversary Proceeding, nor attended the hearing. Without the benefit of the UST's position in this matter, the Court reiterated its concerns about the policy issues raised by the settlement of an action under Section 727 in exchange for a payment to the plaintiff/creditor. Counsel for Chakroun made oral arguments for the approval of the Motion at the August 22 hearing; for the sake of clarity, and because of the importance of the issues presented, the Court directed Chakroun and Djili to make any arguments they wished to make in support of approval of the Motion in pleadings to be filed no later than September 13, 2012. The parties timely filed such briefs, and the Court took the matter under submission.

For the reasons set forth below, the Court will DENY the Motion in the form currently presented. Should the parties agree to modify the Motion or settle the Adversary Proceeding in a manner that

addresses the Court's concerns, the Court will happily consider an alternative disposition, consistent with the policies identified in this Memorandum.

## I. FACTS

Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on August 25, 2009. Debtor had been a principal in Sliman, LLC, an entity that, in turn, operated "Crepes A Go-Go", a restaurant on Union Street in San Francisco. Prior to the commencement of this case, Chakroun had been an employee of Crepes A Go-Go, and had obtained a judgment in state court in the amount of $60,000 against Crepes A Go-Go, Debtor, and others.

Chakroun timely filed the Adversary Proceeding on November 23, 2009. The original complaint alleged a cause of action under Code Section 523(a)(4) to determine that a debt to Plaintiff/Chakroun was not dischargeable as a debt incurred via fraud or defalcation by a fiduciary, as well as causes of action to deny the debtor a discharge pursuant to Sections 727(a)(2) (concealment of property, fraudulent transfer), 727(a)(3) (failure to keep records or destruction of records), 727(a)(4) (false oath), and 727(a)(6) (failure to obey court order), as well as a claim for recovery of a fraudulent transfer under state law. After a hearing on Defendant's Motion to Dismiss on March 3, 2010, the Court granted the Motion in part, and dismissed two of the causes of action, including the sole cause of action that sought to have Defendant's debt to Plaintiff deemed non-dischargeable. Plaintiff timely filed an Amended Complaint, restating the claims under Sections 727(a)(2), (3), (4) and (6).

This matter originally came for trial on September 26, 2011. During the course of the trial, it became apparent to the Court that the translator supplied by the parties to assist the Defendant, who claimed not to speak or understand English, was not competent. After an *in camera* discussion between the Court and counsel concerning the issues regarding the integrity of the record that would be raised by a faulty translation of the questions posed to Defendant and Defendant's responses, the parties and the Court agreed that it would be most appropriate to have the Court declare a mistrial, and allow the parties to confer about a schedule for retrying the case. The Court announced that disposition on the record during the afternoon of September 26, 2011.

3

Thereafter, on June 14, 2012, counsel for Djili filed a Status Conference Statement in the Adversary Proceeding advising the Court that the parties had settled the Adversary Proceeding, in principle, via a Reaffirmation/Settlement Agreement that was in the course of being executed, and would be brought before the Court for approval shortly. [Adversary Docket #59].

On July 3, 2012, Chakroun filed the Motion, describing the resolution of the disputes as follows: the parties agreed to resolve the Adversary Proceeding in exchange for the Reaffirmation/Settlement Agreement, pursuant to which Djili would reaffirm his debt to Chakroun in the amount of Sixty Thousand Dollars ($60,000), *provided, however,* that if Djili timely made payments to Chakroun in the amount of Thirty Thousand Dollars ($30,000) pursuant to an agreed upon schedule (which included an initial payment of $10,000), Chakroun would forgive the remaining Thirty Thousand Dollar ($30,000) debt. Memorandum Supporting Motion at 2 [Docket #47]. On July 3, 2012, Chakroun also served Notice and Opportunity to Object to the Reaffirmation Agreement on the chapter 7 trustee, UST, and all creditors. [Docket #48].

The Trustee filed his Report of No Distribution in this case on October 7, 2009. There thus appear to be no assets that will provide a dividend to creditors in this case.

## II. ANALYSIS

**A.) The Proposed Reaffirmation Agreement**

The parties' presentation of this matter as approval of Reaffirmation Agreement warrants examination. While it is generally true, as Chakroun asserts, that the Court need not approve all reaffirmation agreements, and ordinarily would be concerned only with the issue of whether a reaffirmation agreement posed an undue hardship on the debtor, the context of this matter requires a different analysis. First, the proposed Reaffirmation Agreement neither includes nor references an existing credit agreement, as required by Section 524(k)(4), nor does the Agreement refer to or relate to collateral the debtor's use of which is the inducement to enter into the Agreement. Indeed, there is no reason for the Debtor to sign a Reaffirmation Agreement other than the benefit of ridding himself of an action under Section 727. The parties concede that the purpose of the Reaffirmation Agreement is to settle the Adversary Proceeding. Memorandum Supporting Motion at 2 [Docket

4

#47].

Under the terms of the proposed settlement, one creditor, Chakroun, would benefit from payment of $30,000 from assets outside of the no-asset bankruptcy estate and the debtor would receive a discharge after dismissal of the Adversary Proceeding.

**B.)    Legal Discussion under Federal Rules of Bankruptcy Procedure 7041 and 9019**

In light of the foregoing discussion, it is clear that the approval of the Reaffirmation Agreement is part and parcel of a disposition of the Adversary Proceeding. This raises two related issues, i.e., the Court's obligations in approving a disposition of an action under Section 727 as set forth in Fed.R.Bankr.P. 7041 ("Rule 7041"), and the Court's obligations in considering an approval of a compromise of controversy under Fed.R.Bankr.P. 9019 ("Rule 9019") and relevant case law.

Rule 7041 provides that "a complaint objecting to the debtor's discharge shall not be dismissed at the plaintiff's instance without notice to the trustee, the United States trustee, and such other person as the court may direct, and only on order of the court containing terms and conditions which the court deems proper." The Rule directs the Court to determine that notice was proper when a Section 727 action is proposed for dismissal. The Rule further instructs that the Court assess the terms of the dismissal in order to "prevent tainted compromise." *In re Chalasani*, 92 F.3d 1300, 1313 (2d Cir. 1996). To avoid flawed compromise, under Rule 7041 the Court may insist on case-appropriate preconditions to a Section 727 dismissal. *See* Fed.R.Bankr.P. 7041, Advisory Committee Note (1983)[1] (noting the special concerns raised by dismissal of a Section 727 action through compromise, clearly evidencing the intent of Rule 7041).

Some courts interpret Rule 7041 as requiring that a court deny any attempt to approve a dismissal of an action under Section 727 based upon a settlement that does not resolve the issue of debtor's entitlement to a discharge. *See, e.g., In re Moore,* 50 B.R. 661, 664 (Bankr. E.D. Tenn.

---

[1] "Dismissal of a complaint objecting to a discharge raises special concerns because the plaintiff may have been induced to dismiss by an advantage given or promised by the debtor or someone acting in his interest. Some courts by local rule or order have required the debtor and his attorney or the plaintiff to file an affidavit that nothing has been promised to the plaintiff in consideration of the withdrawal of the objection. By specifically authorizing the court to impose conditions in the order of dismissal this rule permits the continuation of this salutary practice."

5

1985) ("Under no circumstances…may a debtor purchase a repose from objections to discharge. A discharge in bankruptcy depends on the debtor's conduct; it is not an object of bargain."); *In re Vickers*, 176 B.R. 287, 290 (Bankr. N.D. Ga.1994) ("Selling discharges would be a disease that would attack the heart of the bankruptcy process, its integrity.").

This Court does not agree. There are circumstances in which a Section 727 action could be disposed of responsibly pursuant to an agreement between the parties. For example, a chapter 7 trustee might properly bring an action under Section 727 on behalf of the estate and all creditors, and subsequently settle the action for the benefit of the estate and all creditors. The Court does not find that Section 727 settlements are *per se* improper.

The majority of courts do not automatically disapprove settlement of Section 727 actions, but instead carefully evaluate the underlying compromise. Recognizing the public policy concerns present in Section 727 action dismissal, the majority approves settlement only in limited circumstances. *In re Mavrode*, 205 B.R. 716, 719 (Bankr. D. N.J. 1997). Under Rule 9019, the appropriate standard for approving settlement in a Section 727 action involves whether the proposed settlement is fair and equitable and in the best interest of the estate and all creditors. *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988); *In re Speece*, 159 B.R. 314, 317 (Bankr. E.D. Cal. 1993) (the interest of creditors is "paramount" in any analysis under *Woodson*). In determining whether the settlement inures to the benefit of the estate and all creditors, two factors are commonly emphasized in the case law: (1) whether there was notice to all parties in interest, no resulting substitution, and a foreseeable benefit to the estate and its creditors; and (2) whether a benefit to the bankruptcy estate and all creditors otherwise exists.

Some courts focus on the first factor, notice to all parties in interest. These courts have allowed settlement of Section 727 actions where notice was proper, allowing an interested party (typically the UST) to consider substituting in to prosecute the action to conclusion. The reasoning is that where notice is proper under Rule 7041, there is no substitution, and there exists the possibility of benefit to the estate and all creditors through payment of a claim from outside the estate, the settlement passes muster. *Mavrode*, 205 B.R. at 721-722 (allowing settlement after notice

6

1 and opportunity was given in an asset case).

2 Under the current facts, examined through this notice-focused lens, the Court finds no benefit to the estate and all creditors from the parties' proposed settlement. In *Mavrode*, an asset case, there was the possibility that all creditors could benefit from receiving a greater dividend after the settlement amount was paid from assets outside of the bankruptcy estate. *Mavrode*, 205 B.R. at 721. Here, there is no such potential benefit for the creditor body at large because this is a no-asset case. In a no-asset case, in which the proposed settlement's only "benefit" is the withdrawal of the claims of the creditor initiating the Section 727 action, there is in reality no benefit at all to the creditors and the estate. *In re Childs*, 2006 WL 6508183 at *5 (Bankr. N.D. Tex. March 30, 2006) (declining to approve the Section 727 settlement in a no-asset case, noting that if the settlement amount had been paid into the bankruptcy estate for the benefit of all creditors, it might have ruled differently).

The creditors will be neither helped nor harmed by the proposed settlement in this case. The Court finds it unremarkable that there was no attempt to substitute in after notice and opportunity to the creditors and the chapter 7 trustee. From a financial perspective, the creditors are presumably indifferent. The Court would not expect financially unaffected creditors in a no-asset case to champion the cause of the integrity of the bankruptcy process. This is a role more properly reserved for the U.S. Trustee, who declined to file a response after receiving notice of the proposed compromise.

Finding no benefit to the estate and all creditors through the notice-oriented concept, the Court turns to a strong contingent of cases that directly seek benefit for the whole in any acceptable Section 727 settlement. When a party brings a claim under Section 727, the underlying purpose is to protect the integrity of the bankruptcy system, and the action inures for the benefit of the bankruptcy estate and all creditors. *In re de Armond*, 240 B.R. 51, 55 (Bankr. C.D. Cal. 1999). Many courts hold that because Section 727 claims are brought for the benefit of the estate and all creditors, it necessarily follows that any settlement must benefit the whole. *In re Smith*, 207 B.R. 177, 178 (Bankr. N.D. Ind. 1997) ("Unless the same parties that would benefit from the successful prosecution of a particular action also receive the benefits of its settlement, the settlement is

7

improper. No amount of notice, absence of objection, or lack of creditor interest can change this principle or remove the fundamental impropriety which taints a settlement that does not comply with it."); *In re* Bates, 211 B.R. 338, 347 (Bankr. D. Minn. 1997) ("[O]nce a creditor undertakes to advance the interests of the bankruptcy estate by filing a § 727 complaint, the creditor may not abdicate that responsibility or use that position to its own advantage by settling the litigation on terms which will allow it to receive a private benefit solely for itself.") (internal citations omitted); *de Armond,* 240 B.R. at 58 ("The settlement of such a claim belongs to all creditors.").

This Court holds that there must be some benefit to the estate and all creditors if it is to approve a settlement of the Adversary Proceeding between the parties. This conclusion is fully consistent with the case law that evaluates such settlements. By denying approval of the Reaffirmation Agreement, the Court does not force the parties to continue litigation. The case of *In re Margolin,* 135 B.R. 671 (Bankr. D. Colo. 1992), is not relevant in the current determination. In this case, settlement of a Section 523(a)(2) nondischargeability suit for the benefit of one creditor in exchange for the dismissal of a Section 727 claim was allowed after notice was given to the chapter 7 trustee and creditors, no intervention or substitution was made, and the chapter 7 trustee objected to the resulting Section 727 claim dismissal. The Court found that forcing the creditor attorney to continue to litigate a Section 727 claim against its client's interests was an "untenable" position. *Id.* at 673-674.

Here, neither the Court nor any party in interest is forcing the sole creditor, Chakroun, to continue prosecuting the Adversary Proceeding. The Court simply holds that in order for the Court to determine that the dismissal was not based upon an underlying tainted compromise, and for any settlement to be fair and equitable and in the best interest of the estate, there must be some cognizable benefit to the bankruptcy estate and all creditors.

### III. CONCLUSION

The Court hereby determines that in order for the settlement to be fair and equitable, the settlement amount must benefit the estate and all creditors. The Court recognizes that settlements in a Section 727 action brought by an individual creditor may be proper under certain circumstances. It

8

is clear that the purpose of Section 727 in allowing objections to the debtor's discharge is to protect the estate, all creditors, and the integrity of the bankruptcy process. As such, the Court refuses to approve a settlement that benefits one creditor and only that creditor. The Court would entertain any proposed settlement that inures to benefit of the bankruptcy estate and all creditors. The parties may amend the settlement agreement to benefit the bankruptcy estate and all creditors in the manner set forth herein. The Court will enter a separate Order denying the Motion to Approve the Reaffirmation Agreement.

**\*\*END OF MEMORANDUM DECISION\*\***

| | |
|---|---|
| 1 | COURT SERVICE LIST |
| 2 | Slimane Djili |
| | 5680 Casino Ave. |
| 3 | San Pablo, CA 94806 |
| 4 | Stephen D. Finestone |
| | Law Offices of Stephen D. Finestone |
| 5 | 456 Montgomery St. 20th Fl. |
| | San Francisco, CA 94104 |
| 6 | |
| | Peter N. Hadiaris, Esq. |
| 7 | 17 Taylor Dr. |
| | Fairfax, CA 94930 |
| 8 | |
| | John Kendall |
| 9 | 945 Morning Star Dr. |
| | Sonora, CA 95370 |
| 10 | |
| | Office of the U.S. Trustee |
| 11 | 1301 Clay St. #690N |
| | Oakland, CA 94612 |

10

Case: 09-47844    Doc# 55    Filed: 10/23/12    Entered: 10/23/12 14:43:30    Page 10 of 10